FILED
2005 Jan-13  PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

IMAGING BUSINESS MACHINES, LLC.

      Plaintiff,

  vs.                        CIVIL ACTION NO. CV 04-J-1104-S

BANCTEC, INC.,

      Defendant.

## <u>MEMORANDUM OPINION</u>

Pending before the court is defendant BancTec Inc.'s ("BancTec") motion for summary judgment (doc. 48) and motion for summary judgment as to Count III of plaintiff's Second Amended Complaint (doc. 64).  The court has reviewed defendant's motions, plaintiff's responses, and the parties' evidentiary submissions.  Based on a consideration of the foregoing and for the reasons set forth below, the court is of the opinion that BancTec's motions for summary judgment are due to be **GRANTED** with respect to all counts of plaintiff's complaint as amended.

## I. Factual Background

On April 27, 2004, plaintiff, Imaging Business Machines LLC ("IBML"), a limited liability company organized under the laws of the State of Alabama, filed a complaint against BancTec, a corporation organized under the laws of Texas, in the Circuit Court of Jefferson County, Alabama seeking damages and to enjoin the

sale of a certain high volume scanner manufactured by defendant. Notice of
Removal, Exhibit 2 (doc.1).  On May 27, 2004, defendant removed this lawsuit to
this court on the grounds of complete diversity of citizenship of the parties
pursuant to 28 U.S.C. § 1332(a)(1). Notice of Removal, at ¶ 3 (doc. 1).

Plaintiff alleges that it developed a commercially successful high volume
document scanner with character recognition capabilities known as the
"ImageTrac Scanner".[1]  Second Amended Complaint, ¶ 4.  On or about March 15,
2000, plaintiff and defendant entered into a Reseller Agreement whereby plaintiff
approved defendant as a reseller of the ImageTrac Scanner. BancTec's Motion to
Compel Arbitration and Stay Judicial Proceedings, or in the Alternative Motion to
Dismiss, Exhibit A (doc. 2).  The initial term of the Reseller Agreement was two
years and the Reseller Agreement terminated on March 15, 2002, when the parties
failed to renew the Reseller Agreement as required by paragraph 2.[2]  Pursuant to
the Reseller Agreement, the following was considered "confidential":

> information or material relating to copyrights, trademarks, trade secrets,
> patents; product plans; customer or supplier lists and Proprietary Material
> marked as "Confidential", that is disclosed by either party and is not
> generally known by the Public.

---

[1] In addressing the defendant's motions for summary judgment in this order, this court refers exclusively to
plaintiff's Second Amended Complaint submitted on December 8, 2004. Second Amended Complaint (doc. 57).

[2] Paragraph 2 of the Reseller Agreement states that:
> The term of this Agreement shall be two (2) years from the Effective Date ("Initial Term"), unless
> earlier terminated in accordance with Section 3 herein.  In the event the parties elect to renew the
> Agreement for additional one (1) year terms, such renewal shall take effect upon written agreement
> of the parties prior to the expiration of the Initial Term, or any subsequent renewal term.

Reseller Agreement, ¶ 1.1.

Previously, there was a dispute about whether the parties entered into a new oral contract with the same terms and conditions as the Reseller Agreement of March 15, 2000, as alleged by the plaintiff, or whether the parties only continued a reseller relationship with pricing on a case by case basis, as alleged by defendant. Plaintiff's Supplemental Brief in Support of Motion for Preliminary Injunction (doc. 38) and Defendant's Supplemental Brief in Opposition of Motion for Preliminary Injunction (doc. 46).  At the time of the hearing of plaintiff's motion for a preliminary injunction, the court found the issue to be moot because regardless of whether or not the parties entered into an oral contract upon the expiration of the Reseller Agreement, the Reseller Agreement included the following provision:

> 13.3   Survival of Obligations: The nondisclosure and confidentiality obligations set forth in this agreement shall survive termination of this Agreement for any reason and shall remain in effect for the longer of (i) the period of protection afforded by applicable law or (ii) for a period of two years after the expiration or termination of this Agreement for any reason.

Amendment to Order of October 14, 2004, at 2 (doc. 47).

Plaintiff  alleges that plaintiff continued to sell its ImageTrac Scanner to defendant for resale after the expiration of the Reseller Agreement on March 15, 2002, because defendant made representations that it was not developing a high volume scanner which would be competitive with the ImageTrac Scanner. Second

Amended Complaint, ¶ 15. Plaintiff alleges that defendant's representations were false and were known to be false by defendant when the statements were made, because defendant was simultaneously developing a scanner to rival the ImageTrac Scanner. Second Amended Complaint, ¶ 16. Plaintiff alleges that the misrepresentations were made with the intent that plaintiff rely upon said misrepresentations and continue selling its ImageTrac Scanner to defendant for resale. *Id.* Plaintiff alleges it relied upon defendant's misrepresentation and continued selling its ImageTrac Scanner to defendant for resale. Second Amended Complaint, ¶ 17.

Plaintiff alleges that the defendant developed and offered for sale a high volume document scanner that is very similar in design and appearance to plaintiff's ImageTrac Scanner I and II. Second Amended Complaint, ¶ 23. Gary Murphy ("Murphy"), the President of IMBL, testified specifically as follows:

> Q: Let me refer you to paragraph 24, which is on page 4 of the amended complaint, and just read to you. "Upon information and belief, defendant made improper use of plaintiff's confidential information in designing its infringing product, and copied or reversed engineered plaintiff's ImageTrac scanner in direct violation of the terms of the defendant's agreement with plaintiff." Which ImageTrac do you allege that BancTec made improper use of confidential information?
> A: The ImageTrac scanner, ImageTrac I and II.
> Q: I or II?
> A: I and II.
> Q: I and II. Not III and IV?
> A: No.

Murphy Depo., at 24-25, *See also* Defendant's Reply at 2.

4

Plaintiff alleges that defendant made improper use of plaintiff's confidential, trade secret or proprietary information in designing the DocuScan 9000 scanner, by either copying or reverse engineering the ImageTrac Scanner in violation of the terms of the Reseller Agreement. Second Amended Complaint, ¶ 24. Plaintiff further alleges that defendant is now marketing and offering for sale its DocuScan 9000. Second Amended Complaint, ¶ 26.

On or about March, 2004, in an attempt to sell its new DocuScan 9000, plaintiff alleges that defendant placed a misleading advertisement on its website that allegedly indicated falsely that "DocuScan 9000 already is delivering up to 25 percent fewer jams in testing as compared to a comparable multi-pocket scanner in its class, and recovery from those jams that is 25 percent faster." Second Amended Complaint, ¶ 27. Plaintiff alleges that this advertisement was misleading because the DocuScan 9000 was not compared to a comparable multi-pocket scanner in its class because defendant compared the DocuScan 9000 only to its own S-Series scanner which the IBML alleges is not in the same class as either the ImageTrac Scanner or the DocuScan 9000. Second Amended Complaint, ¶ 28. Plaintiff further alleges that defendant has distributed additional false advertising to customers at trade shows taking place in various states, and in calling on customers throughout the United States. Second Amended Complaint, ¶ 30.

Plaintiff brought this lawsuit against defendant, seeking legal and equitable relief under the Alabama state law theories of fraud (Count I), misappropriation of

trade secrets (Count II), and breach of contract (Count V and Count VI), the Texas state law causes of action of unfair competition (Count III) and breach of confidence (Count IV), and false advertising under 15 U.S.C. § 1125(a)(1)(B), also known as the Lanham Act (Count III).

## II. Procedural History

Prior to defendant's current motions for summary judgment, plaintiff moved for a preliminary injunction and a hearing was held on said motion on October 13-14, 2004.  On October 14, 2004, the court denied plaintiff's motion for a preliminary injunction (doc. 43).  On October 27, 2004, the court amended its prior order dated October 14, 2004, to make additional specific findings of fact and conclusions of law. Amendment to Order of October 14, 2004 (doc. 47). [3]

## III. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[3] Plaintiff argues that the Court's findings made in this court's Supplemental Order of October 27, 2004, are not binding because the findings were made in the context of a hearing on a preliminary injunction.  Plaintiff's Opposition to Defendant's Motion for Summary Judgment, at 7-8 (doc. 59).  Defendant responded that it is not requesting the court to adopt its finding that plaintiff was not entitled to a preliminary injunction, rather defendant seeks summary judgment in part, on this court's conclusions of law made in this court's Amended Order dated October 27, 2004. BancTec's Response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, at 6-7 (doc. 62).  The defendant cites *AM General Corporation v. Daimler Chrysler Corp.*, 246 F.Supp.2d 1030, 1033 (N.D. Ind. 2003) for the following proposition:

In this case there is no concern about different standards. GM does not invite the court to adopt its ultimate conclusion in the preliminary memorandum–that Daimler Chrysler is unlikely to succeed on the merits– as the reason for the summary judgment; such an invitation would be inappropriate because the conclusion from the preliminary injunction answers a different question than that asked at summary judgment.  Instead, GM asks the court to grant summary judgment on the basis of a contract interpretation made as part of its preliminary injunction decision, and it is appropriate for the court to do so.

together with the affidavits, if any, show that there is no genuine issue as to any

material fact that the moving party is entitled to judgment as a matter of law."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has

explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence of an
> element essential to that party's case, on which that party will bear the
> burden of proof at trial.  In such a situation, there can be no genuine issue as
> to any material fact, since the complete failure of proof concerning an
> essential element of the nonmoving party's case necessarily renders all other
> facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

The party moving for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion and identifying

those portions of the pleadings or filings which it believes demonstrates the

absence of a genuine issue of material fact. *Id*. at 323.  The burden then shifts to

the non-moving party to "go beyond the pleadings and by affidavits, or by the

'depositions, answers to interrogatories, and admissions on file' designate

'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at

324, Fed. R. Civ. Pro. 56(e).  In meeting this burden the non-moving party "must

do more than simply show that there is a metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).  That party must demonstrate that there is a "genuine issue for trial." Fed.

7

R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). For factual issues to be considered genuine, they must have a real basis in the record. *Id*.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case...A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. Al Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co*., 939 F.2d 946, 953 (11th Cir.1991). However, the court should not make credibility determinations, nor weigh the parties' evidence. *See Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 848 (11th Cir.2000).

## IV. Analysis

### A. Fraudulent Misrepresentation

Plaintiff alleges that defendant defrauded plaintiff by fraudulently misrepresenting to plaintiff that it was not building a competitive scanner while the parties were in a contractual relationship. Second Amended Complaint, ¶¶ 31-35. Plaintiff alleges the following in its Second Amended Complaint:

15. After March 15, 2002, Plaintiff only continued to sell its Scanners to

Defendant for resale, because Defendant represented to Plaintiff that Defendant was not developing a high volume scanner which would be competitive with Plaintiff's ImageTrac Scanner. Defendant made this representation on several occasions in 2002 and 2003.

16. Defendant's representations were false and were known to be false by Defendant when made.  Said misrepresentations were made with the intent that Plaintiff rely upon said misrepresentations and continue selling its ImageTrac Scanner to Defendant for resale.

17. Plaintiff relied upon Defendant's misrepresentation and continued selling its Scanners to Defendant for resale.

18. If Plaintiff had been told the truth that Defendant had copied the ImageTrac Scanner and was building a product to compete with the ImageTrac, Plaintiff would have stopped selling to Defendant.

Under Alabama law, the elements of fraudulent misrepresentation are (1) a *false* representation; (2) of material *existing fact*; (3) relied upon by the plaintiff; and (4) proximately resulting in *actual damage* to the plaintiff.  *Underwood v. Life Ins. Co. of Georgia*, 14 F.Supp.2d 1266, 1270 (N.D. Ala. 1998) (emphasis in original) citing *Boswell v. Liberty Nat. Life Ins. Co.*, 643 So.2d 580, 581 (Ala. 1994).  Thus, under Alabama law, fraud without actual damage cannot be the basis of an action at law, as proof of actual damage is an essential element of fraud. *Id*. Furthermore, damages in a fraud cause of action under Alabama law cannot be founded on mere speculation. *Skipper v. South Cent. Bell Tel. Co.*, 334 So.2d 863, 865 (Ala. 1976).

Defendant argues that plaintiff's fraud claim fails because there is no evidence in the record indicating that plaintiff has been damaged as a result of

defendant's fraudulent misrepresentation.[4]   The court agrees. After a lengthy

hearing on the motion for preliminary injunction, the court stated that plaintiff had

not produced any evidence whatsoever to prove that it had lost any sales or

suffered any loss of good will of the ImageTrac I and II in competition with the

DocuScan 9000.   The only sales which plaintiff allegedly lost to the DocuScan

9000 were in competition with the ImageTrac IV, not the ImageTrac I and II.

Exhibit B to Defendant's Motion for Summary Judgment (doc. 48).   See also

Murphy Depo., at 24-25 and Defendant's Reply at 1-3.   Murphy's declaration

testimony  regarding probable lost sales or sales at reduced prices without more is

due to be stricken as it contradicts his previous deposition testimony with regard

to ImageTrac I or II.  *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234,

1240 n.7 (11th Cir. 2003); *Van T. Junkins and Associates v. U.S. Industries, Inc.*,

736 F.2d 656 (11th Cir. 1984).  *See also, Soovdi v. Century Plaza Co.*, 622 So.2d

1275 (Ala. 1993).  Affidavits must contain statements based upon the personal

knowledge of the affiant, and mere speculation and statements of subjective

beliefs are not the equivalent of personal knowledge...Affidavits making vague,

general assertions do not fulfill the requirements of Rule 56(e)).  Without proof of

actual damages, plaintiff's claim fails as a matter of law.  Consequently,

defendant's motion for summary judgment on the plaintiff's fraudulent

---

[4] This court notes that BancTec in its motion for summary judgment never disputed the underlying facts
alleged by IBML, relying exclusively on the argument that the fraud claim fails due to lack of damages.

misrepresentation claim is due to be granted.

## B. Misappropriation of Trade Secrets

Plaintiff alleges that defendant misappropriated certain of IBML's trade secrets contained within the ImageTrac I and II in creating the DocuScan 9000. Second Amended Complaint, ¶¶ 36-45. On October 13-14, 2004, the court was presented with evidence relating to the plaintiff's trade secret claim when the court considered plaintiff's motion for a preliminary injunction. In Amendment to Order of October 14, 2004, the court found that Alabama law governs the resolution of plaintiff's misappropriation of trade secrets claim.

A misappropriation of trade secrets claim under *Ala. Code* § 8-27-3 requires the plaintiff to demonstrate a trade secret as defined by the code has been misappropriated by the defendant. *Ala Code* **§** 8-27-2(1)(a)-(e) defines "trade secret" as being composed of six elements and the party asserting the existence of a trade secret carries the burden of proving all the above elements. *See Public Sys., Inc. v. Towry*, 587 So.2d 969, 971 (Ala. 1991).[5] The court has already found

---

[5] Under applicable Alabama law, a trade secret is information that:
a. Is used or intended for use in a trade or business;
b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
d. Cannot be readily ascertained or derived from publicly available information;
e. Is the subject of efforts that are reasonable under the circumstances to maintain secrecy; and
f. Has significant economic value.

*See Ala. Code § 8-27-2(1).*

that the misappropriation of trade secret claim must fail as a matter of law because the alleged trade secrets information was generally known in the plaintiff's trade or business, was readily ascertained or derived from publicly available information, and was not the subject of efforts that were reasonable under the circumstances to maintain its secrecy.  Amendment to Order of October 14, 2004, at 5-12 (doc. 47).  Additionally, as set forth above in IV(A), plaintiff has failed to cite the court to any evidence that it has suffered any damages as a result of the alleged misappropriation by defendant.  Therefore, the court finds that defendant's motion for summary judgment with respect to misappropriation of trade secrets claim is due to be granted.

### C. Unfair Competition Under Texas Law

Next, plaintiff alleges that defendant's unauthorized use of plaintiff's confidential and proprietary information, and its copying of plaintiff's product constitute "unfair competition in violation of Plaintiff's rights under the common law of the state of Texas." Second Amended Complaint, ¶ 48.  Assuming, as alleged by plaintiff, that Texas law applies, the general elements of the unfair competition for misappropriation under Texas law are: (1) the plaintiff created his product through extensive time, labor, skill, or money; (2) the defendant used plaintiff's product in competition with plaintiff, gaining a special advantage (a free ride) because the defendant bore little or no burden of the expense of development; and (3) the defendant's use of plaintiff's product caused commercial

damage to plaintiff.  *See Schuchart & Associates, Professional Engineers, Inc. v. Solo Serve Corp.*, 540 F.Supp. 928, 944 (D.C. Tex 1982) citing *Synercom Technology, Inc. v. University Computing Co.*, 474 F.Supp. 37, 39 (N.D. Tex. 1979).  Proof of damages to a reasonable certainty is a necessary element of the cause of action of unfair competition.  *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983).

Assuming that plaintiff has a possible cause of action under the Texas state law for unfair competition, however, such a claim must fail as a matter of law because plaintiff has failed to provide this court with evidence to a reasonable certainty of any damages arising from defendant's actions.[6]  For the reasons stated above in IV(A), defendant's motion for summary judgment on plaintiff's Texas state law cause of action of unfair competition is due to be granted.

## D. Breach of Confidence Under Texas Law

Additionally, plaintiff alleges that defendant's unauthorized use of plaintiff's confidential and proprietary information to its own advantage constitutes a breach of confidence under Texas law.  Second Amended Complaint, ¶ 55.

Assuming, as alleged by plaintiff, that Texas law applies, the elements of a breach of confidence under Texas law are: (a) possession by the plaintiff of

---

[6]For that reason, the court declines to examine the other elements of a Texas state law cause of action for unfair competition.

knowledge or information which is not generally known; (b) communication of this knowledge or information by the plaintiff to the defendant under an express or implied agreement limiting its use or disclosure by the defendant; and (c) use or disclosure by the defendant of the knowledge or information so obtained in violation of the confidence, to the injury of the plaintiff. *Kinnear-Weed Corp., v. Humble Oil & Refining Co*., 150 F.Supp. 143, 159 (D.C. Tex 1956). The plaintiff has the burden of proving each of these elements. *Id*.[7] The breach of confidence being an action at law, plaintiff has the burden of proving that it has been damaged by defendant as an essential part of its cause of action and the proper measure of damages in an action at law for breach of confidence is the plaintiff's loss of profits. *Id*. [8] As stated above in IV(A), plaintiff has failed to prove to any degree of certainty that any damages resulted from any alleged breach on defendant's part. Therefore, the defendant's motion for summary judgment is due to be granted with respect to this claim as well.

## E. Breach of Contract

---

[7] The defendant cited *Tavana v. GTE Southwest Inc.*, 1999 WL 512624 * 3 (Tex. App.-Dallas) for the proposition "to the extent that a party claims damages for breach of confidence, that claim is no more than a variant of a claim for misappropriation of trade secrets." Defendant's Motion for Summary Judgment, at 9 (doc. 48). To the extent that a breach of confidence under Texas law is analogous to a misappropriation of trade secrets claim under Alabama law, the court has already found that plaintiff does not have a cause of action for misappropriation of trade secrets against defendant  in Section IV, B of this order.

[8] In addition, plaintiff has failed to prove the first of the elements of a breach of confidence claim under Texas law.  In particular, under Texas law no cause of action for breach of confidence can accrue to the owner of an alleged trade secret by reason of the use or publication of such secret by another, after the owner has revealed his secret to the public by the sale of articles incorporating the secret. *Kinnear-Weed Corp.*, 150 F.Supp. at 159.  In this case, all of the acts on the part of defendant upon which plaintiff's complaint rests occurred after plaintiff sold the ImageTrac Scanner to the public.

Plaintiff alleges that defendant has breached the parties' Reseller Agreement.  Second Amended Complaint, ¶¶ 58-66. With respect to the Reseller Agreement and assuming further that a new contract was entered into between the parties as alleged by plaintiff after March 15, 2002, a cause of action for breach of contract under Alabama law requires the plaintiff to prove that (1) there was in fact a contract between the parties; (2) that the actions of the defendant were a breach of the terms of that contract; and (3) that damage resulted from the breach. *See Montgomery Airport Authority v. Epps Aircraft, Inc.*, 658 So.2d 354, 357 (Ala. 1994).  In order for a breach of contract claim to survive summary judgment, plaintiff must produce substantial evidence of damages. *Soovdi v. Century Plaza Company*, 622 So.2d 1275 (Ala. 1993).  As stated above in IV(A), plaintiff has failed to prove to any degree of certainty that it suffered any actual damages as a result of any breach of any contract by defendant. Therefore, defendant's motion for summary judgment is due to be granted with respect to the plaintiff's breach of contract claims contained within Counts V and VI of the Second Amended Complaint as well.

### F. False Advertising Claim

Finally, plaintiff alleges "[d]efendant's false advertising concerning the DocuScan 9000 constituted commercial advertising in commerce and constitutes unfair competition in violation of [p]laintiff's common law rights and constitutes a violation of 15 U.S.C. § 1125(a)(1)(B).  Second Amended Complaint, ¶ 49.  In

15

order to prevail on a claim under 15 U.S.C. § 1125(a)(1)(B), also known as the

Lanham Act, for false advertising, a plaintiff must prove:

     (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the [plaintiff] has been – or is likely to be – injured as a result of the false advertising.  *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1247 (11th Cir. 2002) (citing *Alpo Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 964 (D.C. Cir. 1990)); *United Industries Corp. v. Clorox Co.,* 140 F.3d 1175, 1180 (8th Cir. 1998).

*Hickson Corp. v. Northern Crossarm Co., Inc.,* 357 F.3d 1256, 1260 (11th Cir. 2004).

     The first element of the Lanham Act test requires that the plaintiff show that the statements at issue were either "(1) commercial claims that are literally false as a factual matter" or "(2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Id.* at 1261.  A plaintiff attempting to establish the second kind of falsehood, i.e. that an advertisement is literally true but misleading, must "present evidence of deception" in the form of consumer surveys, market research, expert testimony, or other evidence." *Id.*

     Without addressing the first four elements of a false advertising claim, the court finds that plaintiff has failed to provide substantial evidence of any damages incurred, or likely to be incurred, as the result of the alleged false advertisement.

16

See Analysis in IV(A) above.  Therefore, defendant's motion for summary judgment on plaintiff's false advertising claim under 15 U.S.C. § 1125 is due to be granted.

## IV. Conclusion

For the foregoing reasons, the court hereby **GRANTS** the defendant's motions for summary judgment on all of plaintiff's claims.  This court shall dismiss said claims by separate order.

**DONE** and **ORDERED** this 13th day of January, 2005.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE